IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA    : | |
| : | |
| : | |
| v.    : | Criminal No.: 05-246-06 (RMC) |
| : | |
| : | |
| REMEGIO GONZALEZ-OLVERA    : | |

## MEMORANDUM IN AID OF SENTENCING

Defendant, Remegio Gonzalez-Olvera, through undersigned counsel, respectfully submits the following memorandum in aid of sentencing.

**FACTUAL / PROCEDURAL BACKGROUND :**

On or about August 2, 2005, officers of the Bureau of Immigration and Customs Enforcement (ICE) were conducting an investigative sweep as part of "Operation Cardshark", a long term criminal investigation of fraudulent document trafficking in the District of Columbia. Mr. Gonzalez-Olvera was taken into custody, and his car was seized. A number of incriminating items, including documents recognized as ledgers of fraudulent document sales, were taken from Mr. Gonzalez-Olvera's car. Nevertheless, because of the large number of individuals taken into custody as part of the investigation that day, the ICE agents decided to administratively arrest Mr. Gonzalez, as well as a number of the other detainees, based on his illegal status. Mr. Gonzalez agreed to a stipulated order of removal and was held in ICE custody while the ICE agents continued the criminal investigation and the United States Attorney's Office sought an indictment. On or about September 22, 2005, as a result of his arrest on August 2nd, Mr. Gonzalez was charged by indictment with conspiracy to possess and transfer fraudulent documents and related charges. Based on the indictment, an arrest warrant was issued that day by the Magistrate Judge. On or about October 6, 2005, the warrant was executed, and Mr. Gonzalez-Olvera was transferred for his initial appearance before this Court.

- 2 -

On or about August 30, 2006, following the Court's denial of defendants' motions to dismiss for speedy trial violations, Mr. Gonzalez-Olvera pled guilty to the conspiracy count - Count One. Sentencing was set for November 6, 2006 and a presentence report (PSR) was ordered.

**ADVISORY SENTENCING GUIDELINE CALCULATIONS** :

The PSR prepared by the probation department accurately sets forth the guideline calculation in this case. The PSR recognizes that Mr. Gonzalez-Olvera was only involved from the end of May through July, 2005, and is entitled to a minor role adjustment. His total offense level is 15, and his criminal history category I. Thus the guideline range is 18 - 24 months. The parties have agreed that the 18 - 24 month guideline range is the applicable range for the reasons set forth in the PSR. Thus there are no objections to the PSR.

**DEFENDANT'S HISTORY AND CHARACTERISTICS** :

Mr. Gonzalez-Olvera is a 42 year old man with no prior criminal record. He has been a hard worker all his life. He went to school until he was fourteen years old - the age that the government no longer pays for education in Mexico. Being unable to afford further education he began to work to help support his family - first in a chocolate factory, then a chemical factory, and thereafter as a plumber and a welder. In addition to being a hard worker, he is also a devoted family man. He has been with his wife since 1994. They have three daughters, including two from his wife's prior marriage. He is the primary provider for his wife and three children who live in Toluca, Mexico.

Due to the difficulties making a decent wage in Mexico, he followed some friends to the United States with the hope that he could better provide for his family. Most of the money he earned went to supporting them. From July 2004 through November 2004 Mr. Gonzalez-Olvera worked at Vlasic Pickles in Imlay City, Michigan. He was laid off in November because of the

- 3 -

seasonal nature of the work, and moved to the Atlanta area, where he did construction work for about 3 months. In February 2005, he moved to Valdoosta, Georgia, where he worked for a bag factory which made bags for dog food.[1]

In May 2005, he left Georgia to come to the Washington, D.C. area to stay with some friends and try to find construction and landscape work,  He was generally able to find work several days a week at the day labor site in Silver Spring. Shortly after arriving in the D.C. area, he was introduced to the document fraud business in the Columbia Road area. On the days that he did not find day labor work, he began selling the illegal documents. He was usually able to sell 2 - 3 documents on the days he was out there, supplementing his income. He was involved in the document fraud activities for a relatively short period of time when he was arrested.

In short, Mr. Gonzalez-Olvera is a decent person, who came to the United States hoping to be able to find work that Americans were not generally doing. He worked hard, and sent most of his earnings home to his family. He fell into the opportunity to make additional money selling the fraudulent identity documents and began doing that on the days he could not find other work. He did not understand the gravity of the problem this activity was causing in this country. He, like many of his countrymen, thought America is the land of opportunity, and that everyone is treated well here. After more than a year in jail, he has a true appreciation that identity fraud is a serious matter in this country. It has been a difficult and embarrassing lesson for him, particularly since he had never been in trouble before.

Mr. Gonzalez-Olvera has consistently shown that he is a decent person who got caught up in something he should not have been involved in. He confessed to the authorities when interviewed by the ICE agents. Early on he indicated a desire to plead guilty and accept

---

[1] Counsel's investigator was able to verify the defendant's employment with Vlasic Pickles through the company. He also interviewed a family member who lived with the defendant from December 2004 until May 2005, who provided utility bills in the defendant's name for that time period, and confirmed the employment at both the construction and bag companies.

- 4 -

responsibility.[2]   He has tried to make the best of his situation, and has involved himself in the educational and instructional programs available at the jail.  He has received at least three Certificates for completing those programs.  The defendant intends to bring the Certificates to court to show Your Honor and the prosecutor.

In short, Mr. Gonzalez-Olvera is a good person who made a serious mistake.  He has accepted responsibility, and seems sincerely shaken by the experience.  Counsel is confident that this is a mistake in judgment that he will not repeat.  His life decisions have generally been driven by his strong commitment to his family, and his willingness to work hard to support them.  However, the past fifteen months in jail has greatly tempered his vision, and is all the deterrent he needs.  He is looking forward to returning to Mexico, where he can be with his family and make the best of the work opportunities there.  As a result of his experience in this case, he has no desire to return to the United States.   As a first offender, having served the equivalent of nearly a 17 month sentence, counsel submits that a "time served" sentence is appropriate.

**DEPORTABLE ALIEN STATUS SUPPORTS A TIME SERVED SENTENCE**

As the Presentence Report indicates at paragraphs 74 and 75, defendant's status as deportable alien is a factor the Court can take into consideration when determining if a downward departure is appropriate.  As a deportable alien, defendant is not entitled to the benefit of 18 U.S.C. Sect. 3624(c), which allows prisoners to enter into pre-lease programs up to six months before the end of their sentences.  See, *Lartey v. Department of Justice*, 790 F.Supp. 130 (D.C.L.A 1992).  In addition, in *United States v. Smith*, 27 F.3d 649 (1994), our Circuit held that a downward departure from the recommended sentencing range may be appropriate if a

---

[2] That information was conveyed to the prosecutor, with the request that we be able to join in and await the outcome of the Motions to Dismiss which had already been filed in the case. The prosecutor agreed.  As soon as the motions were denied, the plea agreement was finalized. However, due to counsel's other commitments the plea could not be entered until the end of August.

- 5 -

defendant's status as deportable alien is likely to cause a fortuitous increase in the severity of his confinement. Since Mr. Gonzalez-Olvera's status makes him ineligible for less severe treatment for the remainder of his sentence, he is entitled to some *Smith* consideration. Thus defendant submits that the *Smith* factors further support a sentence of time served, which will still require him to remain in local jails until he is deported.

**CREDIT FOR TIME SPENT IN CUSTODY SINCE DEFENDANT'S INITIAL ARREST**:

As noted above, on August 2, 2005, Mr. Gonzalez-Olvera was arrested as part of Operation Cardshark, a long term investigation of fraudulent document trafficking in the District of Columbia. Although there was probable cause to arrest him criminally at that time, the government agents chose to administratively detain him, largely to give them more time within which to return the indictments as to the individuals arrested. He was detained in a nearby jail facility used by ICE, where they retained easy access to him for the criminal investigation. The government thereafter returned an indictment in this Court against him, and two weeks later had him transferred to this jurisdiction to be arraigned on the criminal charges - charges which were largely the result of the August 2nd arrest and detention.

18 U.S.C. 3585 provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - (1) as a result of the offense for which the sentence was imposed . . ." There was no doubt that the defendant was going to be criminally charged following his August 2, 2005 arrest. The only real question was how quickly the government would lodge the charges against him and the other arrestees. The agent testified that he knew they generally had about 90 days before an individual would be removed based on an order of removal. Therefore, it is clear that the government knew they had a 3 month window within which to charge the defendant. They returned the indictment in about 50 days. The decision where to hold the defendant pending the indictment clearly had strategic implications for the government. As the testimony suggested, it

- 6 -

gave them more flexibility to continue to investigate the case without being bound by the 30 day speedy indictment requirement. Regardless, if not for Mr. Gonzalez-Olvera's involvement with the individuals targeted in the criminal investigation, he would not have been arrested and detained. Thus the facts in his case support a finding that the time in ICE detention was in large part the "result" of the offense for which the sentence in this case is being imposed.

A sentence of "time served" takes care of that issue, and no BOP recommendation would be necessary. However, if the Court imposes a sentence which requires the BOP to calculate jail credit, then defendant respectfully requests a judicial recommendation that he get credit for the time in ICE custody between August 2, 2005 and October 6, 2005. At a minimum, he should get credit from September 22, 2005, the date of the indictment and the arrest warrant in this case, since the warrant acted as a detainer preventing the defendant's deportation during that period of time.

Defendant recognizes that if the Court does not impose a "time served" sentence, the Bureau of Prisons (BOP) will decide whether to give Mr. Gonzalez-Olvera credit for the time prior to his appearance in this Court on October 6, 2005. See, *United States v. Montez-Gavira*, 163 F.3d 697 (2nd Cir. 1998). However, the BOP will not have the benefit of the knowledge this Court has regarding the relationship between the ICE detention and the criminal investigation. Simply stated, the BOP will not be able to tell from the documents they receive, absent a recommendation from the Court, that the facts support a finding that Mr. Gonzalez-Olvera is entitled to credit for the time before October 6, 2005.[3] Therefore, this Court should make a judicial recommendation that the defendant be given jail credit for the time in ICE custody.

---

[3] Defendant requested that more detailed information be included in the PSR under the "Release Status" section, but the probation department indicated that it is not appropriate to give a more detailed description in that section. Thus it seems that a letter or judicial recommendation should be submitted in order to assure that the BOP gets the information needed to fairly determine whether the defendant is entitled to the additional jail credit under the statute and BOP guidelines. In addition, counsel would note that he has spoken with an official from the designation and computation section of the BOP, who confirmed that in "gray area" cases such as this one a recommendation from the judge is very helpful.

- 7 -

In summary, while the determination of jail credit is left up to the BOP, the Court is able to make a recommendation to the Bureau of Prisons regarding jail credit. This Court has heard much about the close relationship between Mr. Gonzalez-Olvera's quasi-criminal arrest and his administrative detention pending the indictment in this case. Without a recommendation from the Court, the BOP will not know that the detention was sufficiently "related to [this] offense" to warrant credit under the statute. See, 18 U.S.C. 3585(b). Thus a judicial recommendation that Mr. Gonzalez-Olvera receive jail credit from August 2, 2005 is appropriate in this case.[4]

**CONCLUSION:**

*United States v. Booker* 125 S.Ct. 738 (2005) marked the end of twenty years of mandatory federal sentencing guidelines. This Court must now sentence the defendant in accordance with the factors set forth in 8 U.S.C. 3553(a), taking into account the sentencing guideline range. The import of 18 U.S.C. 3553(a) is that the Court should impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in the statute. Counsel is urging the court to sentence Mr. Gonzalez-Olvera to a sentence of time served. In the alternative, counsel recommends a sentence of 18 months with a recommendation that the defendant get BOP credit for all the time he has been in custody since his arrest.

First, counsel submits that a sentence of time served is a reasonable sentence for a non-violent first offender under all the factors in the case, particularly a defendant who cooperated with authorities by confessing his involvement when interviewed by authorities. Second, counsel would note that Immigration and Customs Enforcement already has an Order of Removal for Mr. Gonzalez-Olvera. Therefore, when he finishes serving his sentence, he will be taken into ICE custody, presumably for a period up to 90 days, and then will be deported. Thus there is no need for additional incarceration to protect the public, provide just punishment, or afford adequate

---

[4] In the alternative, he requests a recommendation for jail credit from September 22, 2005, when the indictment was returned and the warrant was issued to act as a detainer.

- 8 -

deterrence to criminal conduct. Accordingly, the requested sentence is more than sufficient to satisfy the 3553(a) considerations. Third, such a sentence will spare valuable criminal justice resources. Under defendant's proposal he can be transferred directly from the District of Columbia Department of Corrections to ICE custody for deportation. There will be no need to designate him or transfer him to a federal facility. Thus he will not have to be moved twice, as would likely happen if there is a longer sentence, or if the BOP denies him credit for all of his time in custody. Such a sentence will therefore conserve BOP and U.S. Marshal Service resources by sparing them the time and expense associated with the initial sentencing calculation, designation, transfer, and imprisonment of Mr. Gonzalez-Olvera by the federal authorities, as well as the subsequent transfer back to ICE custody for detention and deportation.

Mr. Gonzalez-Olvera has now served the equivalent of a 17 month sentence (if he gets credit for the time served in ICE custody and the ususal good time credits from the BOP)[5]. That means that by the time the PSR and other paperwork is transferred to the BOP, his sentence is computed, and he remains in ICE custody pending deportation, he will have served the equivalent of an 18 - 20 month sentence even if he is sentenced to "time served".

Wherefore, in light of the defendant's mitigating history and characteristics, the principles set forth in the *Smith* case, and the 3553(a) sentencing considerations, defendant respectfully urges the Court to impose a sentence of time served and not impose a fine. In the alternative, if the Court sentences the defendant to a specific term of imprisonment, he requests the following judicial recommendations to the Bureau of Prisons (BOP) :

a) Judicial recommendation for BOP jail credit from August 2, 2005 since the ICE detention was "the result of the offense for which the sentence was imposed." See, 18 U.S.C. 3585(b); and.

---

[5] As noted above, counsel submits that Mr. Gonzalez-Olvera should be entitled to BOP jail credit because his time in ICE custody between August 2, 2005 and October 6, 2005, and is therefore requesting a judicial recommendation that he receive such credit.

- 9 -

    b)  If the sentence requires a designation to a BOP facility, that the defendant be designated to an appropriate facility in Texas or some other facility in the Southwest region of the United States.

                              Respectfully submitted,

                              /s/
                            Howard B. Katzoff (Bar # 348292)
                            717 D Street, NW Suite 310
                            Washington, D.C. 20004
                            (202) 783-6414
                            Attorney for Gonzalez-Olvera

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing Memorandum was electronically served on Fred Yette, Esquire, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C. 20530, and hand delivered to United States Probation Officer Renee Moses-Gregory, 333 Constitution Avenue, N.W., 2nd Floor, Washington, D.C. 20001, this __1st__ day of __November__, 2006.

                              /s/
                            Howard B. Katzoff