IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. : 05-246-06 (RMC)** |
| | : | |
| v. | : | |
| | : | |
| **REMIGIO GONZALEZ-OLVERA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. For the reasons explained below, the government urges the Court to impose a sentence that falls within a Sentencing Guideline range of 18 to 24 months. The government's reasoning for this request is explained below.

The defendant was arrested by U.S. Immigration and Customs Enforcement ("ICE") on August 2, 2005, because he was determined to be present in the United States illegally. He remained in administrative custody, in order to be deported to Mexico, until a criminal indictment was returned and he was arrested on criminal charges on October 6, 2005. On August 30, 2006, the defendant pled guilty to violating 18 U.S.C. § 371, Conspiracy to Commit an Offense Against the United States, that is, Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States. The defendant does not dispute that the applicable sentencing guideline range is 18 to 24 months. Nevertheless, he requests that the Court impose a sentence of time served.

<u>The defendant should not receive a "Smith" departure.</u>

Citing <u>U.S. v. Smith</u>, 27 F.3d 649 (1994), the defendant argues that his status as a deportable alien supports a sentence of time served. In <u>Smith</u>, the Court ruled that a downward departure from the governing sentencing range may be appropriate when a defendant's status as a deportable alien will cause a fortuitous increase in the severity of his confinement. As an example of the harsher nature of his confinement, the defendant points to the fact that he is not eligible to enter a pre-release program up to six months before the end of his sentence because he must be deported. However, given the relatively short length of the defendant's potential sentence, his status as a deportable alien, and the fact that he cannot enter a pre-release program, will not have any appreciable affect on the severity of his sentence. The <u>Smith</u> case should not be used as a justification for decreasing the defendant's sentence below the 18 months called for by the Sentencing Guidelines.

<u>The defendant should not receive credit for time spent in administrative custody</u>.

The defendant also requests that the Court sentence him to time served in order to take into account the two months that he spent in ICE custody, under administrative arrest, before being arrested on the criminal charges in this case. In the alternative, the defendant asks the Court to recommend to the Bureau of Prisons that he receive two months credit for the time he spent under administrative arrest. As grounds for his requests, the defendant essentially claims that his administrative arrest should be treated as a criminal arrest because, "[a]lthough there was probable to arrest him criminally at that time [that is, August 2, 2005], the government agents chose to administratively detain him, largely to give them more time within which to return the indictments. . . ." Defendant's Sentencing Memorandum, p. 5.

During the motions phase of this case, the Court addressed the difference between administrative and criminal arrests and determined that ICE did not act improperly by placing the defendant under administrative arrest. Despite the defendant's claim, ICE did not arrest the defendant administratively simply to give the government more time to return a criminal indictment, but rather, because the defendant is in this country illegally and the administrative arrest properly placed him on track to be deported. In short, the reason for the defendant's administrative arrest, *i.e.*, to remove him from the United States, is distinct from the reason for his criminal arrest, *i.e.*, to charge him with activities related to the sale of illegal identity documents. Therefore, there is no justification for the defendant's request that the Court impose a sentence below the guideline range in order to give the defendant credit for time he spent in administrative custody; nor is there reason to notify the BOP that he should get credit for the time he was in administrative custody.

<u>The defendant's criminal activities deserve appropriate punishment</u>.

The defendant paints a picture of himself as a nice family man who was committing crimes simply to support himself and his family, and therefore he is deserving of leniency. No matter how nice the defendant may be, and though his goal to support his family may have been laudable, he still knowingly entered this country in violation of the law, and worked jobs at Vlasic Pickles and in other places in violation of the law. Then he came to the District of Columbia and sold illegal identity documents, again, in violation of the law.

A sentence in the range of 18-24 months is appropriate because the manufacture and sale of illegal identity documents is not an insignificant criminal offense. Selling fake identification documents to individuals can lead to other criminal activity. For example, many people who buy the documents are present in the U.S. illegally, and may use the documents to help obtain

employment to which they are not entitled under U.S. law. Many of the fake identity cards contain real social security numbers or other identifying numbers that belong to U.S. citizens, whose identifying numbers may then be used to obtain financial credit that may eventually wreak havoc in the unsuspecting citizens' lives. Identity fraud and its criminal and financial consequences have become major problems in this society.

Selling fake identity documents on Columbia Road has become a major criminal industry, and a lucrative one. That is apparent because individuals, particularly those who are present in the U.S. illegally, continue to flock to that area to sell illegal identity documents. The fact that the vendors seek to send much of their earnings overseas to their families does not justify their presence here or their illegal methods of earning a living. A sentence that appears to be a slap on the wrist will not deter this defendant or others from selling illegal identity documents. In his statement (page 2), the defendant admitted that he has entered the U.S. illegally on two occasions. His sentence should be severe enough to discourage him from returning again in violation of the law. Thus, a fairly lengthy sentence will protect the public from his return and continued criminal activity in this country.

WHEREFORE, the government requests that the Court impose a sentence that is within the sentencing guideline range of 18 to 24 months.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney

By: _____
        Frederick Yette, DC Bar # 385391
        Assistant U.S. Attorney
        Federal Major Crimes Section
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 353-1666
        Frederick.Yette@usdoj.gov